The next matter of call is Case Number 122008, People v. Jerome Bingham, Agenda Number 2. Appellant, are you ready? And are you epileptic? You may proceed. Good morning, Your Honors. May it please the Court, Counsel. My name is Deborah Annal from the Office of the State Appellant Defender, and I represent the Appellant, Jerome Bingham. Sex offenders are almost universally reviled. Illinois' Sex Offender Registration and Notification Scheme began in 1986 as a non-public registry of recidivist child sex offenders for use by law enforcement only. There have since been at least 23 amendments, each one adding new offenses, new requirements, and new restrictions. This Court analyzed and upheld the scheme's constitutionality first in People v. Adams in 1991, and then again in Maltow in 2000, and then after the United States Supreme Court's decision in 2003 in Swift-Vido, this Court decided Cornelius in 2004. It has since relied on those decisions to reject all new challenges. The Appellate Court has also relied on those decisions. But importantly, this Court has never analyzed the current version. And the reason that's important is because the General Assembly has expressly relied on this Court and the United States Supreme Court's findings that registration is not punishment. And it's taken that as carte blanche to continually enact increasingly onerous amendments. The General Assembly has also expressly stated its belief that this Court will police the constitutionality. It's therefore up to this Court to exercise its power to set constitutional boundaries. I'll briefly address Jerome Bingham's as-applied due process challenge, because that provides the most narrow path of relief. But I plan to spend most of my time on the ex post facto argument. Mr. Bingham is a recovering addict. He has a criminal history that one would expect. It consists primarily of minor thefts and drug offenses. He also, when he was 24 years old in 1983, committed a single sex offense. It was an attempt at aggravated criminal sexual assault. He's now 60 years old. He's married. He has three adult children. And in 2014, while working as a scrapper, he stole six wooden pallets from a Kmart parking lot. And that theft conviction triggered mandatory registration as a sexual predator based on the 2012 amendment that rendered any felony conviction on or after July 1st, 2011, that made him have to register. Requiring Mr. Bingham to register doesn't make sense, because the record shows that he poses no more of a threat of committing another sex offense than anyone else who's been convicted of a theft offense. Because he hasn't committed another sex offense in 35 years. And current research shows that offenders who've gone 10 years without committing another sex offense have a very low risk of reoffending. Studies also show that registries don't work. They don't produce recidivism. And SOAR's purpose is protecting the public from sex offenders. It's not just protecting the public from all general crime. So, counsel, is it unreasonable for the legislature to conclude that a person who's been convicted of a serious sex offense and thereafter demonstrates an inability to conform to the law by committing an additional felony offense, it's unreasonable for that same legislature to think that that presents a threat to committing not only future crime, but a future sex crime? Is that your argument, that it's just an unreasonable assertion by the legislature? My argument is that in this case, applying the legislature's determination is unreasonable. We're not raising a fictional challenge, so we're not arguing that it's all across the board unreasonable. We are arguing that in this case, given these particular facts, that it's unreasonable. Because Mr. Bingham clearly does not present a threat to committing another sex offense, any more so than anyone else. Ms. Knoll? Yes. Just to follow up on Justice Thomas' question, though, a broader picture, aren't all of SOAR requirements imposed by federal law? No, Your Honor. Okay, because including the retroactive part of it. So how can we find it unconstitutional if it is? The way that SOAR works is each state enacts their own laws, and the federal laws provide, I guess, guidelines, and they basically give the states financial – I don't actually know exactly how it works. But isn't our law pretty much mirrored the federal law? Our law does not mirror the federal law. We're not yet in compliance with the federal law. The retroactivity provision was recommended by the federal government, but that does not mean that it's constitutional. I understand you're saying it's as applied, but the circumstances I gave you are the same circumstances that apply to the defendant in this case, right? So although you're making a distinction between as applied, what's different about this defendant and the fact that the legislature apparently felt that it was reasonable that someone who had a serious sex offense commits a future felony, that that felony indicates that that particular offender poses a risk not to crime in general, but also to sex crime. Because there is no showing – or actually, the record actually shows that Mr. Bingham does not pose a threat of committing another sex offense, so it's not rational. It's just like in People v. Linder, where the statute was just arbitrary, deciding that any crime was okay to trigger that. It's the same thing that's happening here. So that's the distinction you're saying. You're saying in this particular case, this defendant, there's evidence in the record that indicates that he poses no threat to a future sex crime. Correct. I mean – To committing a future sex crime. No more so than anyone in this room. I mean, he just – he's not someone that should be registering. And that's why, at a minimum, we ask this court to hold that the registration requirement violates due process as applied to Mr. Bingham in order that he alone would be relieved of the duty to register. So is it that the statute is over-inclusive as to him? I think it's over-inclusive, but it's also – it's just not rationally related, because it's excessive. Yes, I guess over-inclusive is one word. It's excessive in relation to the purpose as applied to Mr. Bingham. And so it would be a different case if he'd been convicted of a sex crime 10 years ago? It would be a different case if he'd been convicted of a sex crime 10 years ago. It would be a different case if he'd ever been convicted of another sex crime, but he's only ever been convicted of one sex crime when he was 24 years old in 1983, for which he received the minimum possible sentence. It's a constellation of facts in this particular case that render Mr. Bingham absolutely unsuitable for this – And moving on to the ex post facto argument. Ex post facto provisions are meant to protect socially disparate groups, like sex offenders, from vindictive legislation. So my argument is briefly, we're arguing that it's vindictive as applied to Mr. Bingham, but we're also arguing that generally it's vindictive for all sex offenders. Ex post facto provisions are meant to preserve the separation of powers and protect the poor right to notice of criminality. In 2004, this court rejected an ex post facto challenge to Illinois' registry based on Smith v. Doe. But Smith no longer controls, given how much both Illinois' registry and technology have changed in the last 15 years. And that's why a growing number of courts across the country, including the Illinois Appellate Court in People v. Tedder, have recognized that our current generation of sex offender registries, including Illinois', which is emblematic of how these things have gone awry, have evolved in punishment. In Smith, the court held the Alaska scheme was not punitive in part because registrants weren't required to report in person. Illinois' current scheme requires registrants not only to report in person, but they have to do so more often and in more places than they did in 2004 when this court decided Cornelius. For example, they once had to register once a year. Now they may be required to report up to four times a year in up to three different places. So if they go to school and work and live in three different jurisdictions, they would have to register in all three places. And homeless registrants are required to register every week. And in 1991 and 1998, if a registrant was temporarily absent from home, they had ten days to notify law enforcement. Now, they must report both at the temporary location and the permanent location within three days of any change, at the risk of imprisonment for violating even if it's due to an unexpected hospitalization. This court recently decided that in Pierce. And the duration of registration has also increased for this offense back in 2003 in Alaska. It would have been 15 years in Illinois, 10 years. And it's now a lifetime registration. Even though Mr. Bingham and others in his situation had never before been required to register. And in addition to how and when registrants must report, the legislature has also drastically increased what they're required to report. In 1998, they only had to provide placement, employment, identification, and proof of residence. And it's just inconvenient, but it's not so onerous to make it punishment. By 2007, though, after this court decided Cornelius, this scheme required disclosure of a tremendous amount of personal information that includes internet identifiers like Facebook and Twitter accounts, as well as every website that they've used in the preceding period. And I must apologize, because I did not highlight this in my briefs, because I didn't even realize the statute was so overwhelming, that it says every website used. It's unfathomable to me, given that we use cell phones and iPads and computers all over the place, that you somehow have to compile every website that you've used in a year. It's astonishingly onerous. So, these requirements are exponentially more punitive than what this court considered before. And that's particularly true given that the internet that we now know didn't exist then. Indeed, as the Supreme Court recently said in Packingham, the forces of the internet are so new, so protean, and so far-reaching, that courts must be conscious that what they say today might be obsolete tomorrow. In Smith, the Supreme Court held that the Alaska Scheme was not like parole or probation, because registrants were free to live and work as other citizens without supervision. That's no longer true today, because if you're required to report your internet identifiers, that means government can track you in real time on social media, and also because of having to identify every website you used. Packingham provides a perfect example of this, where the defendant was arrested for violating because an officer found him on Facebook. And we're not arguing that's impermissible. What we're arguing is that it's indicative that this scheme has become punishment. In fact, this closed supervision is even more onerous than probation or parole. So, if I could just turn to another issue. You're saying that we should look at this as punishment. Is that part of the discussion about the jurisdictional issue, about whether or not this is a collateral issue, or if it, in fact, is appealable as part of the court's sentence? I think they're two completely separate issues. The jurisdictional issue is arguing that because, at least the state is arguing that, because Mr. Packingham appealed his theft conviction, that this court doesn't have jurisdiction to consider his SORA registration. And our response to that is that the SORA registration is dependent upon the theft conviction. Therefore, it's covered by, I think it's rule 615B that covers the notice of appeal. So, this court certainly has jurisdiction because of that. But this court also has jurisdiction because this court has supervisory power to consider any case that's before it. So, the argument about the collateral consequences, that's a separate thing. And that's also, that has no bearing on this case whatsoever, because that is a doctrine that is about what judges are required to tell defendants before they plead guilty. And it's apples and oranges. I don't. Could you tell me more about what you mean by supervisory authority? What is the reach of this court's supervisory authority in this matter? It seems to be rather broad, what you're suggesting. It's rather broad. I didn't bring my briefs up, so I don't have the exact language. But it's been, I talked about it in my reply. It's been held to be an enormous power to reach whatever issue. So, any issue the court wants to address, it can? That's before it. That's my understanding, yes. I mean, that's properly presented in the appeal, which our position is that it is. I can adjust that on the rebuttal. Illinois' current scheme has also become more punitive because it is now difficult to imagine a more permanent stigma than having your photograph published online above the bright red words sexual predator. It's now there for all eternity to be seen by anyone who searches your name. And that includes if you have high school friends or maybe someone who's dating one of your children or a curious neighbor or a potential employer. The impact of this could not have been foreseen in 2004. But today, internet publication of sex offender status is the equivalent of being branded with a scarlet letter. On pages 7 through 11 of the anarchist brief filed by Illinois Voices of Reform, there are detailed examples of how online harassment and ridicule has affected people's lives. That was unimaginable in 2004. That was before Facebook existed. And today's registry is also more punitive than earlier versions because the First Amendment right to freedom of speech includes the right to publish and distribute writings, online and otherwise, while remaining anonymous. In Minnes, this court recognized that the internet notification requirement impacts constitutionally protected conduct. That is another severe restraint that did not exist in 2004. The park exclusion also did not exist in 2004. I recognize this court held that that does not violate due process.  We are infinitely more punitive. In addition to restricting participation in the virtual world, registrants' participation in the physical world is severely restricted. As this court recently observed in Chardez, there are more than 600 parks in the city of Chicago alone. Those whose convictions, like observing and qualifying them for the label sexual predator, are banned from all of these places, as well as from every forest preserve, conservation area, bikeways, and many museums in Illinois. Smith upheld the Alaska Scheme in part because it did not restrain activities. Illinois' current scheme does far more than restrain activities. Bingham and others like him are banned from enjoying all of the public nature that's been set aside for the people of Illinois, as well as participating in gatherings that take place in these areas, such as free concerts in the park or a birthday party. They can't visit Stark Rock or any other of our beautiful nature. They can't go to Chicago's Riverwalk, even though they're tax money people there. They're essentially banned from Chicago's Loop, which is threaded with bikeways. This court, again, has held these restrictions to be rational, and I'm not relitigating that. It does not mean, however, that they are not punishment. In People v. Tutter, the appellate court said that they may adjust punishment in some cases, but punishment may never be retroactively imposed or increased. As the Sixth Circuit said in Doe v. Snyder, the fact that sex offenders are so widely feared and disdained by the general public implicates the core counter-majoritarian principle embodied in the Ex Post Facto Clause. The current version of Illinois' SORA has become punitive and therefore violates both federal and state ex post facto laws. This court should therefore reverse the appellate court and hold that retroactive application of SORA violates due process as applied to Bingham as well as both federal and state ex post facto clauses. And this court has no further questions. Thank you. Thank you. Thank you, Your Honor. I'm Assistant Attorney General Eric Levin on behalf of the people. May it please the Court. The defendant's constitutional challenges to both SORA and the park restriction are meritless, but they're also not even properly presented in this posture. I'd like to address that latter question first, and then I'll turn to the merits of the individual claims. The defendant's obligation to register as a sex offender and the application of the park restriction to him are not embodied in the trial court's judgment, in any order of the trial court. They weren't so much as mentioned in any of the trial court proceedings. The problem here is not that the defendant's notice of appeal didn't mention those obligations. It's that the trial court's judgment simply didn't impose them. The purpose of a direct appeal, as shown in this court's Rule 615, is to consider and analyze the actions and orders and proceedings that occurred in the trial court. Every single one of the five things that a reviewing court has the power to do on direct appeal all relate in some manner to an action or proceeding that occurred in the trial court. Now, the only hook that the defendant mentions as a reason for why this court can consider it is Rule 615b-2, which talks about a reviewing court can set aside, affirm, or modify proceedings subsequent to or dependent upon the trial court's judgment or order of appeal from. And the key word there is proceeding. It's undoubtedly true that SORA and the park restriction are dependent upon the trial court's judgment. If the defendant hadn't been convicted of this felony theft defense, he would not be subject to these requirements. But those obligations are not proceedings dependent upon the judgment, and they're certainly not proceedings that occurred in the trial court. And read in context, the other things that a reviewing court can look at, such as the judgments or orders of the trial court. It can modify a conviction or reduce a sentence, order a new trial. Those things all look to actions or hearings or things done in or by the trial court. Rule 615b is not some sort of roving mandate for a reviewing court to look to any possible collateral consequence of a conviction and reach out and address its constitutionality. And this is an important point, not just for formalistic reasons. There are serious practical problems with raising claims like this in this posture. We simply, well, first of all, the state agency and actors that have both the expertise and the responsibility for applying SORA and who would be bound by any sort of injunction or declaratory judgment, which the defendant is essentially asking for here, are not parties to this litigation. They're not in the appellate court, and more importantly, they weren't in the trial court, which leads to the second practical concern, which is that we have almost no factual record concerning and no factual findings concerning the claims that the defendant is now raising. As I mentioned, the SORA obligation and the part restriction were simply not mentioned at all in the trial court proceedings, and for good reason. If the defendant had asked the trial court judge to not impose SORA, the trial court judge would have had no authority to not impose it. Just like the trial court didn't have to impose it, the trial court simply couldn't have exempted the defendant from it. But because of that, none of these issues were litigated. No factual record was developed with an eye towards litigating them. And that leads into my second point, which is that especially with respect to the as-applied due process challenge, this court has repeatedly and recently reiterated that as-applied constitutional challenges depend on factual records and factual findings. It can't just be litigated in a vacuum based on lawyers presenting law review articles and statistics on appeal. There's been no adversarial testing at all of these contentions, and critically, the people had no ability to make a record of their own in the trial court that could be used to defend the constitutionality of these obligations on appeal. And so for those reasons, the claims are simply not proper in this context. Now, it's true that this court's supervisory authority is broad. I'm not sure that it would extend to simply reaching out and analyzing the constitutionality of some obligation that just simply was not litigated below. But even if, as a jurisdictional matter, the court had the authority to reach the issue, it would be, for prudential reasons, it would be unwise to do so. As I said, because of the lack of any record, because we don't have the proper defendants in this court that would be bound by the, I believe the defendant asked this court to order that he be relieved of the obligation to register. And to me, that sounds like he's asking for an injunction or declaratory judgment that would bind the Illinois State Police or the other state agencies or actors that enforce these laws, and they're simply not before the court. This doesn't mean that these issues will not be litigated. In fact, and it doesn't mean that the defendant here or any other defendant in this situation has to violate the law and be charged with it. Now, that is one way that these issues are often litigated, but defendants are free to bring pre-enforcement challenges, but in a civil declaratory judgment context where discovery mechanisms and other fact-finding mechanisms exist where a record can be developed. And if you look at some of the other cases that the defendant relies on, the Sixth Circuit in Snyder or Doe's versus Snyder, that was litigated on a very developed factual record that allowed the court to make certain conclusions, and it's unsurprising that that was a civil 1983 action, which allows for that sort of factual development. So as I say, the issues simply aren't properly presented here, and the court should hold as such and dismiss this appeal and allow these issues to be properly raised and litigated in a future case. On the merits, however, the claims are without merit, and I'll first address the as-applied due process challenge, and here a defendant makes two key concessions. The first is that neither SORA nor the park restriction implicates any fundamental right, nor does the legislation draw lines based on any suspect class, and that means that rational basis review applies. That review is highly deferential. It does not allow reviewing courts to reassess the wisdom or the fairness or the effectiveness of legislation, and that's so even if the legislation is thought to yield harsh results. That's what this court said in the Hayashi case. Instead, what this court asks is whether the legislation is rationally related to a legitimate government purpose, and that leads to the second key concession that the defendants made, which is that both SORA and the park restriction are intended to protect the public from the risk of recidivism posed by sex offenders and that that is a legitimate government purpose. So the only question, then, is whether or not SORA or more narrowly the recapture provision, which subjects sex offenders like the defendant to the SORA's obligations, is rationally related to that legitimate government purpose, and it is for two reasons. At the most specific level, it's rational for the very reasons that the appellate court gave here, which is that a legislature could reasonably determine that somebody who's in the past committed a serious sex offense, like attempted criminal sexual assault, and thereafter, by committing a future felony offense, demonstrates what the appellate court termed a general tendency to recidivate, or what we might call just a general lack of law-abidingness. It's rational for a legislature to determine that that person is more likely to commit another sex offense than a sex offender who has not demonstrated that general tendency to recidivate. Mr. Levin, apparently opposing counsel has indicated that in this case, the difference would be that there's evidence that this particular defendant is not more likely to recommit a sex offense. Well, I would disagree with that interpretation of the record. As I mentioned, because the record is so sparse, I certainly don't think we can say that there's evidence that he does not pose a risk, and I don't even think there's evidence of the weaker position that... Well, the defendant might say, well, there's nothing in the record that shows that I, in particular, am at risk. And my response to that would be, one, in some respects, that's because of the limited record. But at a more fundamental level, to me, that reads like an invitation to strict scrutiny, or narrow tailoring. Now, it's true that the defendant is raising an as-applied challenge versus a facial challenge, but I think the defendant has confused the distinction between facial and as-applied challenges and rational basis and strict scrutiny. So it's absolutely the case that in raising an as-applied challenge, it's no defense for me to get up here and say, well, I can imagine situations where the law is constitutional as applied to other people. No, it's true. The state has to establish... Well, it's the defendant's burden, but the defendant simply has to show that the law is not constitutional as applied to him. But in doing so, the court applies rational basis review, not strict scrutiny, no narrow tailoring is required. Rational basis review doesn't require a close or perfect fit between the means chosen by the legislature and the purpose served by the legislation. So an analogy that I like to think of would be imagine a DUI law that prohibited a person from driving with a blood alcohol level of .08. And if we're applying rational basis review to that, we'd say, well, it's reasonable for a legislature to conclude that people who have a blood alcohol level of .08 or more are not safe drivers, and so we've outlawed that. We wouldn't then allow a defendant to come into court and say, well, because of my unique physiology and other characteristics, I'm a safe driver. And even if he could prove that he were a safe driver at a .09 blood alcohol level, rational basis review allows the General Assembly to make broad categorical judgments. It allows the General Assembly to enact over-inclusive laws. Rational basis review has never been held to prohibit over- or under-inclusive laws. It allows the General Assembly to determine that there's an evil at hand that needs to be addressed and to take reasonable measures towards that end. So as I say, the defendant essentially seems to be asking for individualized risk assessment in every case, which Smith v. Doe, although in the context of an ex post facto clause claim, but in doing sort of the rational basis review part of that doctrine, noted that a General Assembly can, or a legislature, can reasonably conclude that conviction for certain sex offenses itself is evidence of a substantial enough risk of recidivism to justify certain regulatory consequences. And rational basis review doesn't require, in any particular case, individualized risk assessments. I mean, if we had a fundamental right involved or a suspect class and strict scrutiny were the rule, then I can imagine some sort of closer fit would be required. But under rational basis review, that's not the case. Rather, this case is governed by the Court's decisions in People v. Beckman and People v. Johnson. And Johnson, in particular, was a SORA case, and it was applying as-applied review, as-applied rational basis review. And the claim there was that a defendant convicted of the offense of kidnapping a minor where there was no sexual motivation involved. That person was still required to register as a sex offender under SORA. And much like the defendant here says, well, my theft conviction has nothing to do with the risk of sexually recidivating, the defendant there said, my kidnapping of a minor, it's conceded there was no sexual motivation behind it, and so it's just not rational to make me register as a sex offender. And this Court, deferring to the legislature, recognized that the legislature could have rationally concluded, through a chain of reasoning, that even non-sexually motivated kidnappings of minors could lead, potentially, to sex offenses. And the same is true here, where the General Assembly could reasonably determine that, I mean, in fact, the chain of reasoning is a little more direct here. Here, the defendant was convicted of a serious sex offense. It's just that it was somewhat in the past. But the General Assembly could reasonably determine that his more recent demonstration of a general tendency to recidivate is evidence not only that he might commit future crimes in general, but future sex crimes in particular. Taking a step back, however, it would have been rational for the General Assembly simply to take the broader view, which is embodied in Congress's determination in SORNA, which is that, in order to have a comprehensive sex offender registry that serves the public interest and meets the legitimate public purpose of protecting public safety, we need to register all sex offenders. And that's whether they committed their sex offense five years ago or 30 years ago. And this is really the same purpose behind lifetime registration, which courts have upheld, which says that even if the risk might decrease over the years, there is still a risk. And the General Assembly's determined that even if we're talking about 30 years ago, there's enough of a risk to justify putting the person on the sex offender registry. And that's what Congress enacted in SORNA. And now it's true that Illinois is not bound by SORNA. Illinois does lose certain federal funding by not coming into substantial compliance with SORNA, and Illinois has been working towards that end. It still hasn't come into compliance, but in many respects, the lack of compliance is that we haven't gone far enough yet. We haven't fully implemented SORNA. It's not that we've gone too far past SORNA. SORNA sets a floor for state registry systems, not a ceiling. But here, the General Assembly did what the United States Attorney General said it could do, which is that, yes, it's true that SORNA says this applies to everybody, regardless of when their sex offense was committed. But in recognition of the practical difficulties that would be involved in registering all sex offenders, Illinois took the lesser step. So in this sense, it's sort of under-inclusive. It took the lesser step of saying, only if the sex offender somehow comes back into the cognizance of the criminal justice system, hereby committing a new felony, does that person go on the registry. So in this chain of reasoning, it's not the particular felony offense that's relevant. So it doesn't matter if it was a murder or a theft. It's not that that crime showed any tendency, although it did, but what matters here is that it brought the person back into the system, and it allowed Illinois to, quote-unquote, recapture that person and require that they be registered in order to have a comprehensive sex offender registry. Turning briefly to the ex post facto issue, my opponent didn't mention what I think is the easiest way for the court to dispose of this issue, and that's regardless of whether or not the court finds that SORA or the park restriction is punitive, it simply hasn't been applied to the defendant here retroactively, at least not within the meaning of the ex post facto clause. Now clearly, if we had implemented a system strictly along the lines of SORNA, and so if the General Assembly had enacted a law in 2012 that just said anybody who's been convicted of a sex offense ever is a sex offender who must register, and that had then automatically applied to Mr. Bingham or those like him, that would be a retroactive application that would be subject to ex post facto clause consideration. We would say that it's not punishment, and so that it's fine under the ex post facto clause, but at least we would have gotten past step one. Here, as the Seventh Circuit very recently held in an identical case, Johnson v. Madigan, that case is on all fours. It was somebody with a 1983 sex offense conviction who by virtue of a subsequent felony conviction, it happened to be theft as well, in 2014 I think, after the recapture provision went into effect, that person then became subject to SORNA, and the Seventh Circuit quickly dispatched with the argument by noting that it simply wasn't applied retroactively. It's true that the recapture provision looks back to past thefts, and so if the defendant hadn't been convicted of the 1983 sex offense, then the felony, the subsequent felony would not have had SORNA implications for him, but the fact that it didn't apply to him automatically, but instead required him to commit some future act after the passage of the recapture provision satisfies ex post facto clause purposes because the ex post facto clause at base is about giving people notice of the consequences that will attach to their actions, and here the defendant knew or should have known, there was a law in the books that said to him, as somebody with a prior sex offense conviction, going forward if you commit a new sex offense, you will be on the sex offender registry, and for that reason the law is just more like recidivism laws or habitual criminal laws, which increase the penalty for the most recent offense based on prior offenses, but both the U.S. Supreme Court and this court have repeatedly held that such laws do not apply retroactively for purposes of the ex post facto clause. Your time has expired. Thank you, Your Honor. We would ask, if I may very quickly conclude, we would ask the court to dismiss the appeal because these claims are not properly raised in this posture, but if it does address them, we would ask the court to affirm the judgment of the appellate court. Thank you. Thank you. Remodel. So first, regarding jurisdiction. As the state concedes, the sex offender registration is a mandatory consequence of the theft conviction. It's thus dependent upon the theft conviction and covered by the notice of appeal. And in addition to that, this court has plenary review, and Justice Tice, the language I was looking for, is that this court's supervisory authority is an extraordinary power that is hampered by no specific rules or means for its exercise. It's also important to note that no appellate court has ever declined review of this issue. And in terms of the point that administrative agencies would be burdened, I don't understand that argument. I don't see what administrative agencies would have to do at this point for any relief. The relief would be that Mr. Bingham would no longer have this requirement, and that's all that would happen. In terms of the as-applied due process argument in the record, the record in this case is sufficient because we know that Mr. Bingham has not been convicted of any other sex offenses in 35 years. The state argued that you can presume that he has committed those offenses, and that's contrary to the most fundamental principles of our country's criminal justice system, to presume that someone's guilty of something they've never been charged, convicted, it's, frankly, it's offensive. The record also... Yeah, there's nothing else that needs to be shown. And there's also the studies that I mentioned which show that sex offenders who've gone more than 10 years without committing another sex offense are very unlikely to commit another sex offense. In terms of that Mr. Bingham should be required to bring this in a civil proceeding, he is not required to expose himself to actual arrest before he brings a claim. He's also currently represented by counsel on appeal. He doesn't have to pay. If he were to go into a civil proceeding, he would have to pay for an attorney or proceed pro se. And this is a... You know, that's... He has a 10th grade education. And for the due process argument, we're arguing that it's not rational... that the sex offender registration is not rational. It's not rational to require Mr. Bingham to register because the record shows there's no more likelihood of him committing another sex offense than there is any other person who's committed theft. And therefore, the statute is not rationally related to SORA's purpose of protecting the public from sex offenders. And we aren't arguing, and this is an important point, that sex offender registries are impermissible. What we're arguing is that it's impermissible as applied very narrowly to Mr. Bingham on the explicit facts of this case, and more broadly, that it can't be imposed retroactively because the current scheme that has been amended 23 times since it was first enacted, that the punitive effects now outweigh the civil intent. And the legislature has clearly stated that it believes that everything it's doing has been sanctioned by this court. And it's up to this court to exercise its power to set constitutional boundaries. In terms of the argument that the statute is... I'm sorry, that the recapture provision is not retroactive. This is a civil scheme. It's a civil regulatory scheme. And therefore, the analysis is that you have to look to legislative intent. And frankly, Johnson v. Madigan is wrongly decided for that reason. As counsel said, they got through it very quickly. I... yeah. I wish I was the attorney on that case. And... let's see, what else do I have to say? Okay. The other stuff about retroactivity argument is that the habitual criminal cases are inapplicable because despite its punitive effects, we have to look to legislative intent. And here, the legislature has laid out in their reply clearly intended to impose new consequences for prior sex offenses. And they understood the legislation to have retroactive effects. They said it over and over and over during the hearings. And as Landgraf said, and that's the United States Supreme Court case that we rely upon for our retroactivity analysis, the legislative history in this case shows that its responsivity to political pressures poses a risk that the legislature may be tempted to use retroactive legislation as a means of retribution against an unpopular group or individual. There basically is no group less popular than sex offenders. And I think that today's SORA shows that. This court should therefore hold that the current version of Illinois' registration notification scheme constitutes punishment and that the retroactivity provision violates due process as applied to Mr. Bingham as well as the federal and state ex post facto clauses. And if this court has no further questions, thank you very much. Thank you. Case number 122008, People v. Bingham, will be taken under advisement as agenda number two. Ms. Dahl, Mr. Levin, we thank you for your arguments today. You're excused, but our thanks.